IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Gary Frank Ownbey ) | |
| ) | Case No. 11-01618-hb |
| ) | Chapter 7 |
| ) | |
| ) | |
| ) | **MOTION TO LIFT STAY** |
| ) | |
| ) | |

Plaintiffs in the below-referenced actions hereby move before the Court for an Order lifting the automatic litigation stay of cases in the Spartanburg Court of Common Pleas 2009-CP-42-2409 and 2009-CP-42-2410 pursuant to § 362(d)(1).

## FACTS

Gary Frank Ownbey (hereinafter "Ownbey") formerly held an interest in a boat with Steve Hedden and Harry Lancaster, Jr. (hereinafter "Hedden and Lancaster") and an airplane with Charles Hodge (hereinafter "Hodge"). In or about the end of 2008, Ownbey stopped making payments on the airplane and boat. These payments included payments for the aircraft and boat itself as well as storage, maintenance, and insurance. Hedden, Lancaster, and Hodge sent multiple letters to Ownbey regarding payment but Ownbey failed to make any payments. The amount now owed is approximately two-hundred thousand dollars ($200,000.00). Further, pursuant to the terms of the agreements, Ownbey has lost all ownership interests by virtue of failure to make payments.

Plaintiff filed civil actions for breach of contract; breach accompanied by fraud; specific performance and unfair trade practices over two years ago, in April 2009. The complaints were amended to conform to the evidence. Shortly after filing, in May 2009,

Judge Roger Couch ordered Ownbey not to sell or conceal ownership of any vehicles in his possession, including a dark red Mercedes Benz 500 SL, which Mr. Ownbey testified he did not own. Mr. Ownbey was also restrained from dispensing with any of the $30,000 in proceeds of the sale of these vehicles, which he testified he held in one more banks.

In November of 2009, Plaintiff served multiple requests to admit on Mr. Ownbey in both cases. Mr. Ownbey was asked to admit that he entered a valid contractual agreement in both cases; that he failed to make payments; that he breached the contract; that he owed over $70,000 in actual damages; and that he owed interest. Mr. Ownbey failed to answer these requests to admit within the required time period. Plaintiff moved for Summary Judgment based on this failure to answer. A hearing was held in June 2010 on the motion for Summary Judgment and Judge Derham Cole currently has that motion under advisement.

In the Summer of 2010, Plaintiffs witnessed Mr. Ownbey driving the same dark red Mercedes Benz 500 SL that he testified he did not own and filed a Rule to Show Cause why Mr. Ownbey should not be held in contempt on June 28, 2010. The matter came to a hearing before Judge Couch on August 3, 2010. Judge Couch issued an order requiring Mr. Ownbey to transfer the title to the Mercedes Benz 500 SL to Plaintiff pending further order of the Court.

During Mr. Ownbey's testimony during this August 3, 2010 hearing Mr. Ownbey made misrepresentations. A rule to show cause hearing at which Mr. Ownbey was going to be confronted about these misrepresentations was scheduled for March 16, 2011. The day before the hearing, Plaintiffs counsel received a letter stating that Mr. Ownbey had

filed a Ch. 7 Bankruptcy notice and requesting that the hearing be cancelled. Mr. Ownbey's timing is suspect to say the least.

## ARGUMENT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO LIFT THE AUTOMATIC STAY

The decision of the bankruptcy court to lift the § 362 automatic stay is within the discretion of the bankruptcy court and may be overturned on appeal only for abuse of discretion.[1] The automatic stay provisions act to give the bankruptcy court an opportunity to harmonize interests and preserve a debtor's assets, however, § 362(d)(1) allows for a bankruptcy court to terminate, modify, or condition a stay for cause.[2] When determining the existence of cause for the purposes of § 362, the Fourth Circuit requires a court to consider: (1) whether the issues in the pending litigation involve only state law, so that the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.[3]

Applying the factors listed above, the Bankruptcy Court should lift the stay entered in cases: 2009-CP-42-2409 and 2009-CP-42-2410. The Bankruptcy Court should defer to the courts of South Carolina and abstain from these state-law contract and tort actions in the Spartanburg Court of Common Pleas. First, South Carolina courts possess particular

---

[1] In re Robbins, 964 F.2d 342, 345 (4th Cir.1992).
[2] 11 U.S.C. § 362(d)(1).
[3] In re Robbins, 964 F.2d at 345.

expertise in interpreting South Carolina tort and contract law. Because the contract and tort actions only involve questions of state law, they could not be said to benefit from the special expertise of the Bankruptcy Court.

Second, the contract and tort actions have progressed to a hearing in the merits, currently under advisement by Judge Cole and ready for a decision. To allow debtor to pursue identical litigation in the Bankruptcy Court would be highly duplicative and inefficient. This is true especially where the state-court action is nearly complete, and the bankruptcy action remains in its infancy.

Third, the Bankruptcy Court can properly protect the estate by implementing the requirement that creditors seek enforcement of any judgment through the Bankruptcy Court. Additionally, despite the fact that the Debtor currently holds no interest in the airplane or boat, Debtor still listed these items on his schedule of personal property. (Debtor acknowledges that he has no interest in the airplane and boat by listing the current value of his interest as "0.00").

## CONCLUSION

The Bankruptcy Court should lift the stay of these Spartanburg Common Pleas matters in which the state enjoys expertise, and avoid essentially identical litigation in an alternate forum. Mr. Ownbey should not be permitted to use the Bankruptcy Court as a tool to avoid the ramifications of his testimony in the Spartanburg Court of Common Pleas. Finally, the Bankruptcy Court needs to clarify the Debtor's erroneous identification of a personal property interest in the airplane and boat in Debtor's Schedule

B.  Based on the foregoing, the Bankruptcy Court should lift the automatic stay in 2009-CP-42-2409 and 2009-CP-42-2410.

RESPECTFULLY SUBMITTED,          HODGE & LANGLEY LAW FIRM, P.C.

_____
T. Ryan Langley
Attorney for the Plaintiffs
Federal ID: 10047
P.O. Box 2765
Spartanburg, SC 29304
(864) 585-3873

Dated: 5/17, 2011.

EXHIBIT B TO SC LBR 4001-1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF SOUTH CAROLINA

IN RE: Gary Frank Ownbey, Debtor

CASE NO: 11-01618-hb Chapter 7

CERTIFICATE OF FACTS

In the above-entitled proceeding, in which relief is sought by <u>STR of Spartanburg, LLC; ABH Group, LLC; Harry Lancaster, Jr.; Steven Hedden; and Charles Hodge</u> from the automatic stay provided by 11 U.S.C. § 362, I do hereby certify to the best of my knowledge the following:

(1) <u>Nature of Movant's Interest:</u> Payments owed by Debtor on airplane and boat.

(2) <u>Brief Description of Security Agreement, copy attached (if applicable).</u> Agreements to pay for ownership interest in airplane and boat. (Both Attached)

(3) <u>Description of Property Encumbered by Stay (include serial number, lot and block number, etc.).</u>: Debtor lists as personal property: 1) 33.33% ownership of STR of Spartanburg, LLC but lists the value of his interest at $0; 2) 33.33% ownership of ABH Group, LLC but lists the value of his interest at $0. Debtor is correct that he has zero value in STR of Spartanburg, LLC and zero value in ABH Group, LLC but he also has no ownership of STR of Spartanburg, LLC or ABH Group, LLC. The lone asset of STR of Spartanburg, LLC is 1991 Carter Power Boat, Serial No. 45-123456. ABH Group, LLC no longer owns any asset. It formerly owned 1992 Mooney TLS M20M, Serial No. 27-0130. No property should be encumbered by the stay as Debtor has lost all interest in property per Security Agreements.

(4) <u>Basis for Relief:</u> for cause pursuant to 11 U.S.C. § 362; further based on fact that debtor has no ownership or equity in property and/or property is not property of estate - 11 U.S.C. § 362(d)(1); 362 (d)(2).

(5) <u>Prior Adjudication by Other Courts:</u> Copies of Orders attached.

(6) <u>Valuation of Property, copy of Valuation attached (Appraisal, Blue Book, etc.):</u> N/A

Fair    Market

Value:    Liens

(Mortgages):    Net

Equity:

Source/Basis of Value:

(7) <u>Amount of Debtor's Estimated Equity (using figures from paragraph 6, supra):</u> Debtor has no equity or ownership.

(8) <u>Month and Year in Which First Direct Post-petition Payment Came Due to Movant (if applicable)</u>: N/A.

(9)(a) <u>For Movant/Lienholder (if applicable): List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied.</u>: N/A.

(b) <u>For Objecting Party (if applicable): **List or attach a list of all post-petition payments included** in the Movant's list from (a) above which objecting party disputes as having been made. Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.</u>

(10) <u>Month and Year for Which Post-petition Account of Debtor(s) is Due as of the Date of this Motion:</u>

This requirement may not be met by the attachment of a payment history generated by the movant. Such attachment may be utilized as a supplement to a complete and detailed response to (9)(a) above, which should be shown on this certification.

_____
T. Ryan Langley
Attorney for the Plaintiffs
Federal ID: 10047
P.O. Box 2765
Spartanburg, SC 29304
(864) 585-3873

Date of Service: May 17, 2011.

STATE OF SOUTH CAROLINA   )
   )   OPERATING AGREEMENT
COUNTY OF SPARTANBURG   )

This Agreement made 4th day of January, 2008, between Charles J. Hodge and Gary Ownbey who are managers and equal unit owners of ABH Group, LLC, a Delaware Corporation which is owner of one 1992 Mooney TLS M20M, serial number 27-0130 and bearing FAA # N1992M.

## SECTION ONE
## INTENT

The intent of this Agreement is to set forth the owners obligations relative to their use and ownership of the above-referenced Mooney aircraft.

## SECTION TWO
## FINANCIAL RESPONSIBILITY

The parties agree that Charles J. Hodge shall have two-thirds (2/3) ownership rights and use of the above described aircraft and Gary Ownbey shall have one-third (1/3). The parties agree that no owner may encumber the aircraft with any other lien unless agreed to by the other owner(s).

## SECTION THREE
## PILOT PROFICIENCY

The parties agree that each owner/pilot or his designee shall maintain proficiency in the Mooney aircraft. This shall include adherence to all FAR'S. Additionally each owner/pilot or his designee shall complete approved flight training (Example ATM Inc.) receiving an endorsement and be fully authorized by whatever company is insuring the aircraft prior to any flight in N1992M. If an owner/pilot or his designee is responsible for damage to the aircraft, that owner/pilot shall be responsible for any expenses associated with damage or loss of the

aircraft not covered by insurance.

## SECTION FOUR
## REPAIRS, MAINTENANCE AND FUEL

The expense of repairs, maintenance and fuel shall be divided between the owners based upon the percentage of use unless otherwise mutually agreed upon. Each owner shall be responsible for paying $130.00 per hour to cover fuel, repair and maintenance costs. This amount is subject to change if necessary. Fuel accounts will be maintained at the Spartanburg Downtown Airport, and any other mutually agreed upon location.

## SECTION FIVE
## STORAGE

The expense and storage of the aircraft will be divided equally between the owners. Initially the aircraft shall be stored at Spartanburg, South Carolina. The owners shall, by mutual agreement, determine the permanent storage site of the aircraft and the owners also reserve the right to maintain alternate storage sites.

## SECTION SIX
## INSURANCE

The expense of insurance shall be divided between the Owners. An individual owner who causes a claim to be made on the insurance policy will be responsible for the deductible amount if any.

## SECTION SEVEN
## SCHEDULING

The aircraft shall be rotated weekly with Charles Hodge having two weeks, then Gary Ownbey having one week and continuing in that fashion unless otherwise agreed upon. Each week will begin on Monday and end on Sunday. If an owner desires to use the aircraft at a

time which does not fall within his week, permission to use the aircraft must be obtained from the priority owner for usage.

## SECTION EIGHT
## OTHER EXPENSES

Other expenses shall be divided equally between the owners unless mutually agreed upon and such expenses include major engine overhauls.

## SECTION NINE
## PAYMENT OF DEBTS

Each owner shall make payments on debts against the aircraft within thirty (30) days of receipt of the statement. It is agreed for the time being that Charles Hodge through ABH Group, LLC, will be responsible for providing appropriate statements and billings to the owners. This designation can change by mutual agreement of the owners. Any owner delinquent on payment will be financially responsible for any extra charge from late charges, etc. Any owner over ninety (90) days late on a payment will lose a prorated amount plus ten percent (10%) of his ownership in the airplane which will roll over to the other owners responsible for paying that owner's bills. Any owner delinquent for ninety (90) days will lose flying rights until the bill is current.

## SECTION TEN
## LEGAL EXPENSES

In the event of a breach of this Agreement, the breaching party shall be responsible for all reasonable legal expenses.

## SECTION ELEVEN
## SALE

Subject to Section Two, in the event an owner decides to sell his interest in the aircraft, the other owner(s) shall be given the first option to purchase the selling owners share of the

aircraft. In the event the other owner(s) does not exercise this option, the selling owner may sell his interest in the aircraft. In the event the selling owner is unsuccessful after a period of six months in selling his interest in the aircraft, the owners agree that the aircraft may be put on the market for sale at fair market value and if a sale occurs the proceeds shall be divided equally minus whatever bills or expenses may be applicable to that particular owner. No owner shall sell a partial share of his interest in the aircraft without prior approval from the other owner(s).

## SECTION TWELVE
## BINDING EFFECT AND GOVERNING LAW

This Agreement shall inure for the benefit of and be binding upon the heirs, successors or assigns of any of the parties in the event of death or disability. There shall be no assignment of this contract unless made in compliance with Section Ten. This agreement shall be governed by the laws of the State of South Carolina.

_____
Witness

_____
Charles J. Hodge, Manager
ABH Group, LLC

_____
Witness

_____
Gary Ownbey, Manager
ABH Group, LLC

STATE OF SOUTH CAROLINA   )
)   **BOAT JOINT OWNERSHIP AGREEMENT**
COUNTY OF SPARTANBURG   )

This agreement is made ___6th___ day of __July__ 2007, between Harry Lancaster, Jr., Steven Hedden, and Gary Owenby. Lancaster, Hedden, and Owenby may be referred to collectively as "Owners" and individually as "Owner" when no distinction is required.

**SECTION 1 - INTENT.** The intent of this agreement is set forth the Owners' obligations relative to their use and ownership of one 1991 Carter Power Boat, Serial No. 45-123456 and bearing the name "Miss Marilyn". The Boat).

**SECTION 2 - FINANCING.** Owners acknowledge the current value of the Boat is approximately $_____. There is a note payable in the aggregate amount of approximately $ 79,465.28 Dollars in the name of STR of Spartanburg, LLC (the Note) for which the Boat is collateral. The parties acknowledge the responsibility for the note is Harry Lancaster Jr's and Gary Owenby's. Other than the note, no encumbrance shall be placed on the Boat without consent of all Owners.

**SECTION 3 - DEBT REDUCTION.** The parties by majority vote may elect to make principal reduction payments on the current note. Such reductions shall be credited to each Owners pro rata equitable interest.

**SECTION 4 - OWNERSHIP STRUCTURE.** The parties acknowledge they are currently managers in a South Carolina LLC known as STR of Spartanburg, LLC, and the purpose of which is to act as a holding company for the Boat. All Owners shall have 1/3 interest in the LLC.

**SECTION 5 - SCHEDULING.** The use of the Boat by the Owners shall be rotated weekly. Each week will begin on Monday and end on Sunday. Subject to maintenance or otherwise agreed to, each Owner shall have exclusive rights to use the Boat every fourth week, with one week per month scheduled for maintenance, down time or Guests. If an Owner desires to use the Boat at a time, which does not fall within his week, permission to use the Boat must be obtained from the Owner with usage rights during that week. A schedule is attached.

**SECTION 6 - OPERATIONS UNDER STATE AND FEDERAL REGULATIONS.**
When the Owners are utilizing the Boat, it shall be operated under all State and Federal Laws and Regulations, unless otherwise agreed to by the Owners. However, the parties acknowledge intent to have only trained and qualified individuals operate the Boat. No

owner shall take any action, which would be construed as a violation of any applicable

laws. Further, each Owner warrants that he own his interest in the Boat for his own use or for the use of a member (with such Owner) of an affiliated group and not to use in transportation for hire.

**SECTION 7 - REPAIRS AND MAINTENANCE.** The costs of repairs and maintenance shall be divided equally between owners unless otherwise mutually agreed to by a majority of the Owners. Any Owner may perform routine maintenance service upon the Boat such as washing, waxing, or similar activities, and it is acknowledged that such service is a benefit to all Owners. In consideration of this benefit, Owners shall hold harmless any Owner who performs such routine maintenance service upon the Boat from any claim of liability for personal injury or property damage, not otherwise covered by insurance.

**SECTION 8 - DOCKAGE.** The cost of docking the Boat will be divided equally among the Owners. The Boat is currently docked in Georgetown, SC. The decision of the specific locale of where the boat is to be docked shall be agreed to by a majority of the Owners.

**SECTION 9 - INSURANCE.** The Owners shall maintain commercially reasonable hull insurance (replacement value) and liability insurance on the Boat. A change in coverage must be agreed to by a majority of the Owners. The cost of the insurance shall be divided equally between the Owners. If a claim occurs during an Owner's or his guests use, the Owner shall be responsible for the deductible.

**SECTION 10 - FUELS.** Each Owner shall be responsible for their fuel usage. After use each Owner will assure the Boat is returned to its dock location with a full tank of fuel.

**SECTION 11 - OTHER EXPENSES.** All other costs shall be divided equally between Owners unless otherwise agreed upon by all Owners. Such costs will include, but not be limited to fixed bills, annual inspections, bottom cleaning and painting, waxing, repairs and maintenance required to maintain seaworthiness and other costs related to boat registration and taxes. Any costs for capital improvements other than those required maintaining the seaworthiness of the Boat shall be made only upon approval of a majority of the Owners.

**SECTION 12 - PAYMENT OF COSTS.** Lancaster will provide appropriate statements and billings of costs to Owners from time to time (expected monthly). The person responsible for preparing such statements and billings may be changed by a majority of the Owners. Each Owner shall pay his share of the Boat costs within 10 days from receipt of the statement. If an Owner is delinquent the following shall occur:

12.1    He will be financially responsible for any extra charge from late charges assessed by third party vendors providing goods and services with respect to the Boat.

12.2    His use rights under this agreement are suspended until all delinquents amounts

are paid in full.

12.3    If he is over (30) day's delinquent, then his ownership share in the Boat will be reduced 5% and continue at a rate of a 5% reduction in ownership interest every 30 days in which delinquency continues. In spite of any reduction in ownership interest, the delinquent owner continues to be responsible for the costs as set forth above, unadjusted in any manner by the reduction. Any share of ownership in the Boat reduced as described above shall be allocated pro rata among the non-delinquent owners depending on the non-delinquent owners assumption of the delinquent Owner's debt. Owners agree that the reduction called for in this Section is fair and reasonable and that each is relying on the other to pay his share of the costs as set forth above; failure of the Owner to pay his share of costs results in hardship to the non-delinquent owners.

**SECTION 13 - SALE.** Before an Owner transfers his interest in the Boat he shall notify the other Owners of his interest to do so. The existence of and the material terms of any third party offer to purchase, or if none exists, the price and terms proposed by the selling Owner shall be included in the notice. The other Owners shall have the first option to purchase the selling Owner's interest in the Boat for 30 days after receipt of notice. The option price and terms available under this option shall be the price and terms proposed by the selling Owner, which shall not, exceed the price and terms offered the Owner by a third party. In the event the other Owners do not exercise this option, the selling Owner may sell his interest in the Boat to another person according to the price and terms presented to the other Owners. If selling Owner is unsuccessful after six (6) months from the date of receipt of notice in selling his interest in the Boat, Owners agree that the Boat shall be put on the market for sale at fair market value, as determined by the Owners or third party assessment if the parties cannot agree. When a sale occurs, the proceeds shall be divided equally (adjusted for any reduction described in the immediate preceding Section). No Owner may transfer a partial share of his interest in the Boat without prior approval from all other Owners. Any transfer of an interest in the Boat is subject to the transferee agreeing to and becoming a party to this agreement.

**SECTION 14 - NOTICES.** Any notice or other communications to be given in connection with this agreement shall be in writing and may be given by personal delivery, nationally recognized delivery service - prepaid, registered US mail - or by electronic means. It shall be addressed to the recipient as such address or electronic communication number set forth in the signature page below. The place where notice is properly sent to an Owner may be changed by notice to all other Owners. Any notice or other communication shall be conclusively deemed to have been given if by:

**14.1**    Personal delivery on the day of actual notice;

**14.2** Nationally recognized delivery service, on the day of actual delivery, provided written confirmation of receipt is obtained by the delivery service;

**14.3** Registered US mail, on the second business day after deposit, with the US Postal Service; and

**14.4** Electronic communication, on the day of transmittal, if given during the normal business hours of the recipient and on the next day business day if given after normal business hours on any day, in either event upon confirmation of receipt by electronic means or acknowledgment of receipt.

**SECTION 15 - LEGAL EXPENSES.** In the event of breach of this agreement, the breaching Owner shall be responsible for all reasonable expenses, including costs of legal representation. This document shall be governed under the laws of the State of South Caorlina.

**SECTION 16 - GENERAL INTERPRETIVE MATTERS.** Unless otherwise specifically provided in this agreement a majority of Owners may make decisions with respect to ownership and operation of the Boat. There are no third party beneficiaries to this agreement. This agreement shall inure for the benefit of and be binding upon the heirs, successors, and assigns of any of the Owners in the event of death or disability. There shall be no assignment of this contract unless made in compliance with Section 13. If any provision of this agreement or the application thereof to any Owner or circumstance is held invalid or unenforceable to any extent, the remainder of this agreement and the application of that provision to other Owners or circumstances shall not be affected, and that provision shall be enforced to the greatest extent permitted by law. This agreement is governed by and shall be construed in accordance with the laws of South Carolina, excluding any conflict-of-laws rule or principle that might refer th governance or the construction of same to the law of another jurisdiction. This agreement may be executed in any number of counterparts with the same effect as if all signing parties had signed the same document. In connection with this agreement and the transactions contemplated hereby, each Owner shall execute and deliver any additional documents and instruments and perform any additional acts that may be reasonably necessary or appropriate to effectuate and perform the provisions of this agreement and the transactions contemplated therein.

The Owners enter into this agreement intending to be legally bound by signing in the spaces indicated below.

By: _____       By: _____
Harry Lancaster, Jr.                                                Mr. Steven Hedden
510 Connecticut Avenue
Spartanburg, SC 29302


By: _____
Gary Owenby

EXHIBIT A TO SC LBR 4001-1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE: Gary Frank Ownbey, Debtor

CASE NO: 11-01618-hb Chapter 7

NOTICE OF: MOTION FOR
RELIEF FROM AUTOMATIC
STAY (11 U.S.C. § 362(a))

TO: Gary F. Ownbey, Randy A. Skinner (attorney for Gary F. Ownbey), John K. Fort, Trustee AND THOSE NAMED IN THE ATTACHED MOTION PLEASE TAKE NOTICE THAT a hearing will be held on the attached motion on:

June 16, 2011 at 1:30 p.m at the

**Donald S. Russell Courthouse & U.S. Courthouse**
201 Magnolia Street
Spartanburg, South Carolina 29306

Within fourteen (14) days after service of the attached motion, the notice of motion, the movants certification of facts, (and a blank certification of facts form), any party objecting to the relief sought shall:

(1) File with the Court a written objection to the 11 U.S.C, § 362 Motion;

(2) File with the Court a certification of facts (for motions for relief from the automatic stay);

(3) Serve on the movant items 1 and 2 above at the address shown below; and

(4) File a certificate of such service with the Court,

**If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the Court.**

Date of Service: May 17, 2011

_____
T. Ryan Langley
Attorney for the Plaintiffs
Federal ID: 10047
P.O. Box 2765
Spartanburg, SC 29304
(864) 585-3873